Case number 19-2212 Mark McQueen v. OBell Winn Argument not to exceed 15 minutes per side Ms. Melissa Salinas, Supervising Attorney The case to be argued by law students Sumner Truax and Sophia Montgomery Good morning and may it please the court I am Melissa Salinas and I have the honor of supervising and introducing Law students Sumner Truax and Sophia Montgomery. They will be representing Mr. McQueen in this case. Thank you Thank you Morning your honors and may it please the court. My name is Sumner Truax and I'm here this morning with Sophia Montgomery on behalf of the court With the court's permission, I'd like to request five minutes for rebuttal. That is fine, and you may proceed Thank you your honor Mark McQueen was subjected to a system that deprived him of an effective lawyer at trial. It deprived him of an effective lawyer on appeal and then it used his appellate attorneys ineffectiveness to deny him the opportunity to demonstrate that his lawyers were in fact ineffective This court should grant Mr. McQueen relief and should order either an evidentiary hearing in the federal district court or Remand to the state courts for a new appeal so that he can finally have the opportunity to demonstrate his attorneys ineffectiveness Now all of these claims Should be reviewed de novo by this court And the reason is that 2254 D is inapplicable because no state court decision But the last reason state court decision I should say did not deny those claims on marriage grounds that denied them on procedural grounds And what that means is that if the reason for the denial is an adequate and independent state ground Then the claims are procedurally defaulted. They were not adjudicated on the merits Now the problem that the state faces here is that Mr. McQueen's ineffective assistance of appellate counsel claim is not in fact procedurally defaulted Because as this court said in Gilmette 6.508 D3 cannot apply to a claim of ineffective assistance of appellate counsel With respect to the trial counsel claims this court should review the appeal no the appellate counsel claim I'm confused about though if it it couldn't have if it couldn't have been procedurally barred than it was Then it was barred on the merits, right? I mean he didn't prevail on it so either the Michigan Court of Appeals denied it on the merits or if we look through to the State trial court decision that would have been a merits denial, right? So no, your honor, I think we start with the Michigan Supreme Court opinion, which says very clearly that the lead for appeals denied Because the defendant or the applicant has failed to show his burden under 6.508 D Now under Yields and under Harrington v. Richter, that is the last reason state court opinion so To the extent we do any kind of limited look-through which this court is required in Gilmette And that's to the Michigan Court of Appeals order which cites specifically 6.508 D3 and we know from Caesar and Gilmette that when ineffective assistance of appellate counsel claims are erroneously Barred then it's reviewed de novo. That's exactly what this court did in both of those cases and it's what it should do again here So When we look at the merits of the claims de novo Trial counsel was ineffective under Strickland in two ways First when he failed to investigate and call an expert that he himself had recognized was necessary to the case and when he failed to investigate and call an alibi witness An appellate counsel was ineffective when she failed to raise these two significant and obvious claims now one remedy is for this court to reverse the district court and to order an evidentiary hearing because Under Michael Williams, D2 is inapplicable to this case because Mr. McQueen diligently developed the factual record in the state court The district court was free to hold an evidentiary hearing and it did not do so I'll begin by addressing counsel's ineffectiveness with respect to the Dr. Oprah claim The record is clear the trial counsel believed that Dr. Oprah's testimony was necessary The record is also clear that the trial judge the trial judge agreed that Dr. Oprah's testimony was necessary Finally the record is equally clear that an appellate counsel had a strategy of discrediting AM's testimony or calling the questioner credibility And not despite that strategy failed to raise this claim that was basically obvious and significant on the record So weren't all the points that dr. O'Cloak would have said weren't they brought out in cross-examination Your honor. No, we don't believe that they were You know part of the challenge here, of course is Because of appellate counsel's failure and trial counsel's failure, we we don't know precisely what dr Oprah would have said but we do know that in the case people vs. Owens which trial counsel cites in his request for an expert That that case also involved. Dr. Oprah and there she would have testified about the limitations of the forensic interviewing process That's exactly what trial counsel Mentioned in his request for dr. Oprah. That's what he said to her testified to In cross-examination here is Insufficient is an insufficient substitute for that. The reality is that You know, we're talking about a case where the credibility not just of AM but of the entire Forensic interviewing process is central to the state's case There's a big difference between having an expert child psychologist Deconstruct the process of a forensic interview with a with a child witness in having counsel Again himself admitted that he wouldn't be effective if not calling that expert deconstruct that Cross-examined, I mean the reality is that you know juries Juries don't know they don't understand for instance interviewing. It's beyond the pen of the jury and that's why an expert was necessary here That's also why the trial report agreed with that and granted funds from Mr. McQueen to hire an expert So, I think So under chase versus Macaulay I think it's it's fairly clear that With respect to this claim appellate counsel missed a significant and obvious claim in the record and was objectively deficient With respect to prejudice. I think that you know All that's required for prejudice here is a reasonable probability of a different outcome in on both appeal and with respect to the trial Counsel claims there is a reasonable probability If appellate counsel had requested against your view on appeal There certainly would have been almost certainly would have been in case of hearing the standard for again Good hearing is relatively capacious it Simply requires that there are factual issues regarding defendants counsel's performance that require further inquiry and here there certainly are those questions and In an evidentiary hearing or against a hearing in the state courts would have resolved that With respect to the trial counsel claims for the reasons I just kind of laid out about the limitations of the forensic interview process the centrality of of the forensic interviewing process the lack of Physical evidence that directly connects Mr. McQueen to the crime This is a case that really turned on credibility and the fact that Mr. McQueen was denied because of his trial attorneys and appellate attorneys failure was denied the opportunity to really Call the complaining witnesses credibility into the question that's prejudicial and and that's That's why this court should reverse in order either an evidentiary hearing in the federal district court or Remand in the state courts. Let me ask you about about the The alibi witness reported alibi witness who was not called this Archie Yes, I mean as I understand that Mr. McQueen's attorney trial attorney did call an alibi witness Mr. McQueen's girlfriend Tawana Patterson and she testified that she had Spent I think the afternoon evening when this incident Purportedly occurred with with McQueen But Archie McQueen would have testified to a whole different set of Circumstances and events on the on that particular day wouldn't that testimony have been in conflict with Testimony of miss Patterson it would give you give the jury two competing Versions of where mr. McQueen was on the date in question when the when the crime occurred The response is that your honor first. We don't believe that they're fully in conflict We think that they're instead the proper way to view this compliment the Precise timing of the only reason it is unclear on the record. A.m. Was not clear about that. That wasn't listed at any point in throughout the trial It's true that Tawana Patterson's McQueen's fiance did testify about What you know that she was within that day. She was in that evening Archie McQueen would have testified about much later in the evening a much later period of time and I think that You know again the Archie McQueen thing we've got to consider the context here, which is that When we're talking about credibility and this court has already found that failure to call alibi witnesses Can be ineffective assistance of counsel and Archie McQueen would have testified that he was at a party with Mark McClain and What that you know, I think it's fair to say that If counsel was faced with the possibility of calling a single witness And I see my time is expired if I'm you may just finish your answer briefly Just that at a party your honor Had counsel investigated Archie it likely would have yielded far more witnesses than these single witness Tawana Patterson And that would have allowed Mr. McQueen to more fully fulfill his alibi for that evening. Thank you your honors Okay, thank you we're here next from mr. Palace Thank you your honors, please the court. Good morning your honors Opposing counsel. My name is John Pallas assistant attorney general from the state of Michigan I represent the respondent appellee in this case warden when first things first I'd like to say that that even if McQueen is correct that at this direct deferential standard does not apply to any of the three certified claims of Claims that were certified by this court for review the state still will prevail This that is because we even stripped of at the deference so-called Strickland deference carries the day on all three claims That is because the Strickland standard itself is a general standard, which is very highly deferential so in other words even on de novo review Strickland requires wide latitude to be given to the decisions and actions of counsel whether trial counsel or appellate counsel and And we prevail anyway, and and this was the approach taken by the district court in this case And it's really not a bad one. It resolves The matter without having to address the thornier questions of whether defaults apply whether or not there's merit by the state courts And the district court's point is well taken that under even under de novo Strickland review McQueen cannot prevail I could understand why the district court decided to take that approach and it's certainly an option for this court And in any event we believe for the reasons that I'm about to discuss That at the deference applies to all three ineffective assistance of counsel claims the true trial counsel claims As well as the sole appellate counsel claim for failure to raise the two trial counsel claims And let me just begin that analysis by by Responding to something that Mr. Truax said about what the last reason state court decision is in this case the Michigan Supreme Court did in fact deny the Motion for relief from judgment appeal for failure to meet the requirements of 6508 D The problem with that order then is that that under the Gilmette case is considered an ambiguous order and we have to look through to to the next order to see whether what was really happening and And and there's no doubt that the Michigan Court of Appeals as Mr. Truax correctly noted Issued a decision in this case where they denied the application for leave to appeal containing these three claims Citing Michigan Court Rule 6508 D 3 now that's indisputably a procedural default Now if all we were talking about if that was the end of what the Michigan Court of Appeals order did Then we would be talking about procedural default and I don't think I'd have a claim that Ed Lowe did apply here But but but there's something that the Michigan Court of Appeals did in its order Denying the application in addition to denying the application It separately denied McQueen's motion to remand for an evidentiary hearing on his in a Motion Motion that he filed in addition to his application for leave to appeal in the Michigan Court of Appeals In case is clear in this circuit a denial of a motion for evidentiary hearing Containing ineffective assistance of counsel claims is presumed to be an adjudication on the merits of those claims And that's the Nally versus Phillips case cited in our brief It's a case that's been followed by several panels of this court as well as by some of the district courts here in Michigan now McQueen has tried to distinguish Nally and other cases like it by arguing that in those cases The the Court of Appeals denied the motions for evidentiary hearing quote for failure to persuade the court of the need to remand the case Whereas the Michigan Court of Appeals was simply said it was quote-unquote denying the motion for evidentiary hearing in our opinion That's a distinction without a difference If anything Simply denying the motion to remand for an evidentiary hearing appears to be more of an adjudication on the merits Than saying the prisoners failed to demonstrate the need for a remand again a distinction without a difference McQueen has not shown anything That overcomes the presumption that the denial of his motion for an evidentiary hearing constitutes a marriage adjudication of his ineffective assistance of counsel claims Now why does it matter so much whether EDPA deference applies and whether there's a marriage adjudication Well, first of all, there's the double deference that's afforded when EDPA and Strickland come into play together the two of them in Tandem provide an extraordinarily high level of deference And then all of this talk about evidentiary hearings The federal district court cannot expand the record of the case beyond what it was in the state courts at the time It made its decision by evidentiary hearing or otherwise If there is a marriage adjudication of the claim, so that's why it's so important that That there actually is a deference here. Although like I said even on de novo review we should prevail Now turning to the actual ineffective assistance of counsel claims themselves that and I'll start with the trial counsel claims There's the failure to call. Dr. Now McQueen repeatedly states in his brief the trial counsel had obtained the funding to hire Dr Okla as an expert to counter the prosecution's experts and that he even said something along the lines of that He would be ineffective if he didn't call an expert like dr Okla now that the the other side makes a lot of hay of that or tries to make a lot of hay of that But the one thing that we all have to keep in mind here is that Strickland is an objective standard not a subjective standard So what his own opinion of his own competence is is really not relevant here And in keeping with Strickland's presumption of correctness again, even just on de novo review We one has to assume that if counsel obtained the funding to obtain an expert something must have happened between that point and when trial occurred to change his mind on calling his own expert to the stand in the defense case and Counsel's performance simply because he changed his mind apparently Does that mean he was deficient? And I think as we said in our brief and we quote from Richter there But their argument is not just that he changed. I mean, it's not just he changed his mind It's that he didn't even talk to her, right? I mean, isn't that the claim that the attorney didn't bother to talk to the person or follow up before making a Decision about whether to call the person as a witness or not Yes, that that's true that that is that is a component of the claim However, I think there's some dispute here about whether or not the the attorney actually did contact dr Okla now there is a letter from dr Okla that was attached to the prisoners motion for relief from judgment where he indicates that Where she indicates that she had no contact with counsel and that seems to Indicate that there may not have been Contact between counsel and dr. Okla that's not entirely clear from the record of this case But but let's even just assume for a second that maybe there wasn't a good reason for not calling dr. Okla, I think as one of you one of the judges indicated on well, well, mr Truex was speaking the trial counsel did a pretty effective job of taking the prosecution's expert witness to task I mean right off the bat if you look at the transcript right off the bat in his cross-examination of The prosecutor's expert he presents her with the protocol that she's talking about and he kind of almost I Sarcastically talks about the price of that protocol being somewhat around two dollars or something to that effect He gets her to it to say that she followed it But then gets her to admit that she didn't follow the protocols recommendation that victim interviews be videotaped I mean that that's that's pretty damaging and there were just other ways that he Effectively not a long cross-examination by reading it, but effectively really Did what maybe dr. Okla would have accomplished anyway? And here's the thing that we have to bear in mind We have no idea what dr. Okla would have testified to Has she been called as an as a witness? I mean it's entirely possible that if he did contact her that that they discussed the case and And there was a determination that she had nothing of value to add to the case. So that's why he didn't call her You know McQueen says in his state post-conviction affidavit that was attached to his motion for relief from judgment That that she would quote have testified and rebutted care house. Dr. Margo milk makers interview techniques and how unduly suggestive and unreliable it is But what is that based on? That's really just pure conjecture. It's certainly nothing from dr. Okla. There's no there's no affidavit There's no statement from her and again, even if we're not talking about the deference was there a Minor saying is there is no videotape of the interview. Is that right? That's correct, Your Honor. So she would have had to make that evaluation Based on something that was not actually the interview itself. I That's correct There wouldn't have been the visual cues and I think the the kind of thing that would have maybe helped. Dr. Okla opine. I mean that didn't happen here And in the fact that I video wasn't again Mean, I'm sorry. I I do find it a little bit Maybe not troubling, but I don't know I take it you wouldn't agree that cross-examination of the other person's expert is Always going to be an adequate substitute for having your own I mean you there's a difference between putting putting your own person on the stand and you know It's kind of the you know, you can't be something with nothing I mean it kind of behooves you to have your own person. So I don't know I guess I'm curious what you think What the limits would be on when cross-examination is an adequate substitute Is it just a matter of looking at the actual examination and saying oh this guy did a pretty good job I think it's a substitute here. I Would agree with about me and yes I and and I think no no less than the US Supreme Court has said The Strickland does not enact Newton's third law for the presentation of evidence Requiring for every prosecution expert an equal and opposite expert from the defense So, you know, I think you have to take every case on its facts I think he the trial counsel did you know a short night? I'll admit not a very long cross-examination, but a highly effective one and And my point is that when you take that in conjunction with the fact that we really don't know what dr Opa would have testified to I mean the letter that she she Wrote to the prisoner doesn't say what she would have said His allegation in his own affidavit isn't supported with anything Again we're talking about presumptions presumptions of competence presumption that that counsel did as he should have done But let's even get past that for a moment if we talk about Assuming even that there was deficient performance by not calling that expert that he had obtained Expert funds for it our brief lays out the strength of the evidence against McQueen and and I'm not going to belabor Talking about the evidence. Um, it wasn't simply just a credibility contest between am and and McQueen and there's something that the state court said at sentencing that I that I Struck me as I was preparing for this oral argument is that it's sentencing the state trial court said at page ID 847 that the recorded phone call where McQueen asked the victim for her forgiveness and told her that he had effed up Was a big deal to them quote-unquote a big deal to the jury because the judge himself had spoken to the jury apparently after their verdict now the judge doesn't mention anything about the case falling or rising on the Prosecutions expert or lack of the defense expert for that matter. It really sounds like what what got this jury Convinced and what got this jury to believe am was the fact that the Defendants own words in this purported telephone conversation where he basically asked for her forgiveness and says that he effed up And and and the judge says again, that was a big deal to the to the jury So even if there was deficient performance, there is no prejudice from the failure to call. Dr. Okla as a defense witness Now, I'm going to turn now briefly to talk about Archie McQueen. Who's the alleged alibi witness? And and I think it was it was brought out by by one of the judges when mr X is speaking that that doesn't necessarily drive with the with the the story that that the defense was presenting and What mr. McQueen Archie McQueen would have said is that he was with? The prisoner late to the evening on Sunday night at a wrap party at which time that the victim originally said that the sexual abuse occurred Now briefly, I just want to I'd be remiss if I didn't say anything and I certainly don't want to ambush anybody with anything And please be assured that's not my intent here But when I was looking at the circuit court docket entries for this case, I came across something that was kind of interesting Apparently on the same day and this is in the docket entries in page ID 298 Apparently on the very same day that the jury came back with its verdict The docket entries indicate that an order of contempt was issued for a person named Archie McQueen Found in contempt of court sentenced to three days in the McComb County Jail to be released Sunday 724 11 taken into custody So, you know to me that struck me as odd. I mean, there's more to this There's something more about this Archie McQueen individual tells me a couple of things That that that Archie was clearly present at least during Part of this trial or something happened that that he ended up getting held in contempt for He obviously engaged in some kind of bad behavior in connection with this case Which led the court not just to hold him contempt of court, but on top of it to sentence him to three days in jail This is really relevant to our argument the issue before today The reason I would believe it would be relevant would be That it might impact. Mr. Archie McQueen's credibility. I mean, it's not this is the type of person that's going to get held in contempt by a court How believable would that witness have been now again? It's a lot of this is speculation But again, we have to make some presumptions here. I guess for my purposes. I see your times expiring I would rather you address the sort of the underlying issue in terms of whether these Alibis are in conflict and see your time has expired, but maybe you could take 30 seconds to do that. I will judgeful. Thank you I think because the the the defense called to one appears Peterson who was the Prisoner's girlfriend to say that look They were the children were taken back to their grandmother on Sunday evening So that the original timeline during which the victim says this occurred on a Sunday night It couldn't possibly have happened on a Sunday night because the children were back with their grandmother That's why the in a way the lack of having Archie McQueen talk about what happened Sunday night Is okay, because Tawana Peterson says the children were not there Sunday night anyway, so it's duplicative and I since my time's up. I won't say anything further about that But I'm certainly happy to answer any questions about trial counsel or appellate counsel that this panel might have. Okay. Thank you very much. Mr Pallas and We will hear rebuttal from Sophia Montgomery Thank you Yes, good morning, Your Honors. Sophia Montgomery for the petitioner Mr. McQueen. I'd like to make two main points in response And the first is that not every habeas case brought by a state prisoner in federal court is an AEDPA case. AEDPA is a deferential regime But it is inapplicable whereas here there has been no process for fully and fairly litigating the claims in state court and second where there isn't anything to defer to from the state courts and that's the case here because as my co-counsel discussed The Michigan Supreme Court used a procedural rule to dispose of all of the claims in one fell swoop And as a result all of Mr. McQueen's claims that have been certified for appeal by this court should be reviewed de novo I'd also like to discuss the unique importance of the expert and how that helps Mr. McQueen demonstrate prejudice in this case So the gaps in the record in this case are tied to the specific failures of trial and appellate counsel the record Isn't as fully developed as we'd like. We don't have you know four expert affidavits pro bono experts in the state post conviction record as in the Caesar case But we do have enough for prejudice or at least to remand for hearing on prejudice First I want to just take care to frame the credibility issue here as whether the jury believed AM's account as it was shored up by the state and the forensic interview is critical to that Trial counsel said in his motion that an expert that dr Okla was necessary as an expert to testify to the limitations of the forensic interview process for that proposition He cited a Michigan state case the Owens case, which mr. Truex also briefly mentioned. What is your response though? So the interview wasn't available to the to his expert So, what was dr Okla gonna what how was she going to evaluate the interview techniques or any of that without the videotape wasn't the Cross-examination of the other of the state's expert the best way for the defense to try the case then at that point Well respectfully your honor. No, I mean there may have been a transcript, but even if there hadn't dr Okla could have heard the way that dr. Excuse me, Margo Maltmaker was not a doctor Discussed to the interview and she would have dr. Okla could have Discussed what was inconsistent about the interview and other things that am had said She could have explained things about the questions that were suggestive and actually I think the Owens case here is particularly on point because in that case as here there was for example the Suggestion of potentially biased parent who tainted the interview that was also true from that was on the record, you know in in The trial transcripts and everything in this case with Anne's mother. So that was something that dr Okla in Owens could have testified to and and the same is true here and Not to mention the fact that simply the reason that we hire higher experts in the first place is that it is fundamentally different to have Counsel cross-examine a state's witness than to have an expert be able to who was intricately You know familiar with these kinds of techniques who isn't, you know An expert child psychologist testify about what was problematic about this interviewing technique. I Also just like to note that the Caesar case is really incredibly Instructive and is a helpful roadmap here for why the relief that mr McQueen is requesting is so appropriate for the specific injury and procedural problem that has occurred here Both of these cases are fundamentally about trial counsel recognizing the need for an expert Because of the centrality of a kind of testimony that implicated particular Reliable excuse the reliability issues, but then failing to do anything about it and this court in in the Caesar case Specifically said that the failure to investigate or take steps toward procuring this expert was especially unreasonable Because counsel had told the defendant about the need for the expert and the same happened here It's a trial counsel also told the trial court which agreed That's not to say that any time that counsel says on the record I would be ineffective for failing to do X that automatically are but it does in this case serve as evidence of what? Dr. Oakley would have testified to it definitely serves to demonstrate how significant obvious this claim was Yet a pallet counsel then went on not to raise it and so helps us demonstrate the cause and prejudice Prongs of the strickland inquiry for both the IATC and IAAC claims Counsel, what do you anticipate? Presenting would you have dr. Oakley testify at this hearing if we remanded it for hearing on prejudice? I think that would certainly be The the first sort of goal and preference I think that Because of the fact there hasn't been an evidentiary hearing yet there hasn't been any outreach to her but certainly her or another kind of child psychologist would be that would be necessary and certainly the first thing that we would try to do in Either state or federal court. We as a predicate to ordering a Hearing actually have something from dr. Oakland the record telling us what she would say That's what's troubling me here, we just don't really have enough from her as to What what she would testify to at the hearing that could make a difference I Understand that concern your honor I think that in this case, I think it's important to know all the steps that mr McQueen took from his his jail cell To to procure a testimony a testament He would seek to introduce at this hearing the fact that he requested an evidentiary hearing, you know He his efforts were closed off and rebuffed again and again by the state courts And it's just frankly not the kind of thing that the court should be holding against him And if that's really the courts, you know Something that the court is extremely concerned with and remaining to federal court for a federal evidentiary hearing Will be an extremely appropriate and tailored remedy in the Caesar case this court Remanded for a hearing on prejudice in the district court and that would certainly be appropriate and warrant it here in light of those concerns My time is expired if there are no further questions, thank you so much for your time. Okay. Well, thank you Miss Montgomery for your argument and certainly want to thank all counsel here in this case Today for your your briefing and your arguments Mr. Palace and miss Salinas as the supervising attorney Thank you, but I especially want to thank to students from the University of Michigan Clinic Mr. Truex and Miss Montgomery, we know how much effort you put into briefing and preparation for argument and Speaking, you know for myself you Just did a great job. Certainly a service to Mr. McQueen and to the justice system at large. So we appreciate your your efforts and and thank you and And the case will be submitted Thank you very much. Great. Thank you. Thanks again. You did a great job So